***********
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Baddour and the briefs and arguments of the parties. The appealing party has not shown good ground to receive further evidence or rehear the parties or their representatives. Following its review, the Full Commission affirms the Opinion and Award of the Deputy Commissioner, with certain modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. At the time of the alleged injury giving rise to this claim, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. At such time, an employment relationship existed between Plaintiff and Employer-Defendant. *Page 2 
3. At such time, the Employer-Defendant was a duly qualified self-insured.
4. At the time of the hearing before Deputy Commissioner Baddour, Key Risk Management Services, Inc. was the servicing agent for Employer-Defendant, but since that time, Corvel, Inc., has become the servicing agent.
 ***********
Based upon the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff is 39 years old. On January 24, 2008, Plaintiff was employed by Defendant-Employer as a part-time cashier and had an average weekly wage of $159.50. This yields a weekly compensation benefit of $106.33.
2. On January 24, 2008, Plaintiff sustained minor injuries to her nose and left cheek, as well as a minor right-side cervical strain arising out of and in the course and scope of her employment with Defendant when she was hit in the head by a coworker carrying a pan of pizza.
3. Defendants accepted Plaintiff's claim for "a nasal contusion, a left eye contusion and a right-side cervical strain" via a Form 60 dated May 22, 2008, and provided medical treatment for said injuries.
4. On January 24, 2008, Plaintiff was examined by Dr. Gilbert Whitmer of U.S. Healthworks, at which time she complained of a contusion to her nose and a burn to her left cheek. Dr. Whimer released Plaintiff to return to light duty work with restrictions of no lifting over 20 pounds.
5. Plaintiff returned to light duty work for Defendant and was placed in an administrative position which required no modification in order to comply with her physical restrictions, and which paid the same wages as her pre-injury job. *Page 3 
6. Plaintiff returned to U.S. Healthworks on January 28, 2008, at which time she was examined by Julie Crafton, N.P. Plaintiff complained of neck pain.
7. Although Ms. Crafton opined that the neck pain was unlikely related to the workers' compensation injury, Defendants authorized physical therapy and treatment.
8. In February 2008, Plaintiff complained that there was a "lump" in her left eye. On February 6, 2008, she was examined by Dr. Beverlee Stevenson of Cape Fear Eye Associates, who noted no left eye damage and released Plaintiff from care.
9. On February 21, 2008, Dr. Whitmer released Plaintiff to full duty work.
10. Plaintiff became dissatisfied with Dr. Whitmer and, on March 3, 2008, she refused to be examined by him and was discharged from his care.
11. On March 12, 2008, Plaintiff was evaluated by Dr. Zane Walsh of Highland Health of North Carolina, at which time she complained of neck pain and headache. Dr. Walsh noted full range of motion of the neck, as well as normal strength and sensory testing. He recommended physical therapy and released Plaintiff to return to work with restrictions of no lifting over 25 pounds.
12. On April 3, 2008, an MRI of Plaintiff's cervical spine was obtained which revealed small central disc protrusions and minimal spondylotic changes from C4 through C6. The protrusions resulted in minimal central canal stenosis without cord effacement or neural foraminal compromise. Less marked degenerative change was noted at C6-7 without central or neural foraminal compromise.
13. On March 20, 2008, Dr. Walsh's office contacted Tonya Hodges, the nurse case manager, and reported that Plaintiff had repeatedly called Dr. Walsh's office to complain that her *Page 4 
physical restrictions were "not fair." The nurse case manager contacted the Defendant to confirm that Plaintiff's physical restrictions were being followed.
14. In April 2008, Plaintiff complained to the nurse case manager that she was having trouble breathing out of her left nostril. Accordingly, on April 11, 2008, Plaintiff was evaluated by Dr. John Henley of Fayetteville Otolaryngology-Head and Neck Surgery, P.A. Dr. Henley opined that Plaintiff's nasal examination was completely normal, aside for some irritation of the mucosa resulting from Plaintiff's repeated application of Vicks's Vapo-Rub to the inside of the nostril. Dr. Henley instructed Plaintiff to stop this immediately.
15. On April 11, 2008, Plaintiff returned to work late from her appointment with Dr. Henley. Defendant advised Plaintiff that, if she needed to miss work for a workers' compensation medical appointment, she was required to return to work immediately after the appointment.
16. Plaintiff informed Defendant that she was late because her medical appointment was in Greensboro. However, Plaintiff's appointment was actually local. Defendant learned that Plaintiff fabricated the out-of-town appointment as an excuse to miss work and, accordingly, Plaintiff was reprimanded.
17. Four days later, on April 15, 2008, Plaintiff alleged that she sustained an injury to her neck while lifting a pan of corn.
18. Plaintiff's co-worker, Sharon McSwain, testified that when Plaintiff complained that she had injured herself, she walked back into the room where Plaintiff alleged that she was moving corn. Ms. McSwain testified that no corn had been "panned" or moved at all. *Page 5 
19. In his verified written responses to questions approved by Deputy Commissioner Baddour, Dr. Walsh stated that Plaintiff did not sustain a new injury between her March 12, 2008 and April 17, 2008 appointments.
20. The Full Commission finds the testimony of Ms. McSwain and Dr. Walsh more credible than that of Plaintiff and specifically finds as fact that Plaintiff did not sustain a work-related incident on April 15, 2008.
21. In April 2008, Plaintiff also began to complain of numbness of the hands. Dr. Walsh recommended a nerve conduction study of the arms. The EMG/NCV was performed on April 23, 2008, the results of which were normal.
22. On April 30, 2008, Plaintiff informed Defendant that she could not get out of her car because she could not move her legs. Plaintiff informed Defendant that she had been to the emergency room, where she was informed that her leg issues were the result of her neck injury and that she would probably never be able to return to her previous job. This allegation is not corroborated by the medical records and is not credible.
23. On May 23, 2008, Plaintiff presented to Dr. Walsh and reported that she had seen an emergency room physician and a neurologist, Dr. Kenny, both of whom informed her that she had a serious injury that could cause paralysis if she moved her head.
24. The medical records reveal that Mr. Kenny is not a physician, but is a PA-C, with Highland Neurology Center.
25. Mr. Kenny examined Plaintiff on May 5, 2008, at which time he opined that Plaintiff's small disc protrusions would have to be much more severe before a neurosurgeon would consider surgical intervention. He explained to Plaintiff that she did not have a surgical issue. *Page 6 
26. Defendants attempted to send Plaintiff for a second neurological consultation in hopes of allaying Plaintiff's fears. An appointment was scheduled with Dr. Robert Lacin. However, upon review of Plaintiff's medical records, Dr. Lacin opined that Plaintiff did not have a surgical problem and declined to examine her.
27. When the school year ended, Plaintiff went to Mexico for the summer where she obtained unauthorized medical treatment, including an MRI. During this time, Plaintiff missed an appointment with the authorized provider, Dr. Walsh.
28. When the school year resumed, Plaintiff resumed the administrative position with Defendant until Dr. Walsh could reschedule her appointment following an FCE.
29. Plaintiff underwent an FCE on August 29, 2008, during which she passed zero of seven validity criteria, indicating "very poor effort or voluntary submaximal effort." In addition, Plaintiff demonstrated four out of five Waddell's signs, indicating malingering or symptom magnification.
30. On September 4, 2008, Dr. Walsh opined that he could not address Plaintiff's functional capacity due to the lack of validity of the FCE. He stated that, as he had no objective evidence on electrodiagnostic testing or imaging studies to restrict Plaintiff's activities, he released her to return to full duty work.
31. Further, on September 4, 2008, Dr. Walsh opined that Plaintiff had reached maximum medical improvement and that she had sustained no permanent partial impairment in relation to her January 24, 2008 injury.
32. In his verified written responses to questions, Dr. Walsh again confirmed that Plaintiff did not sustain any permanent impairment or permanent physical restrictions in relation *Page 7 
to her January 24, 2008 workers' compensation injury. Dr. Walsh also indicated that as of September 4, 2008, no further treatment would be of benefit to Plaintiff for said injury.
33. The Full Commission finds the testimony of Dr. Walsh to be more credible and of greater weight than that of Plaintiff and finds as fact that Plaintiff has reached maximum medical improvement and sustained no permanent disability or work restrictions in relation to her January 24, 2008 workers' compensation injury.
34. The Full Commission further finds as fact that further medical treatment is not required for Plaintiff's January 24, 2008 work injury.
35. As a result of her full duty release, Plaintiff was returned to her pre-injury job of cashier/cafeteria worker on September 11, 2008. Plaintiff worked her regular job for one day.
36. On September 12, 2008, Plaintiff reported that she injured her back in the course and scope of her employment while lifting a pan of grape juice.
37. Plaintiff's co-worker, Robin McConago, testified that there were no witnesses to Plaintiff's alleged incident. She further testified that Plaintiff did not complain of the alleged incident until much later in her shift when she was asked to wash dishes.
38. Plaintiff presented no competent, credible lay or expert evidence to support her allegation that she sustained a work-related injury on September 12, 2008.
39. The Full Commission finds the testimony of Ms. McConago more credible than that of Plaintiff and specifically finds as fact that Plaintiff did not sustain a work-related incident on September 12, 2008.
 ***********
Based upon the competent evidence of record, the Full Commission makes the following: *Page 8 
 CONCLUSIONS OF LAW
1. Although Defendants accepted Plaintiff's January 24, 2008 workers' compensation claim for minor injuries to her nose, left cheek, and neck, the Form 60 does not create a presumption of ongoing disability. Sims v. Charmes/Arby'sRoast Beef, 142 N.C. App. 154, 542 S.E.2d 277 (2001); disc.review denied, 353 N.C. 729, 550 S.E.2d 782 (2001).
2. In order to prove that she is entitled to indemnity benefits, Plaintiff must establish disability by showing that, as a result of her compensable injuries, she is unable to earn the same wages she earned prior to her injuries. Russell v. Lowes ProductDistribution, 108 N.C. App. 762, 425 S.E.2d 454 (1993).
3. The competent and credible medical and other evidence of record establishes that Plaintiff sustained no permanent disability or work restrictions in relation to her workers' compensation injuries of January 24, 2008. Plaintiff is not entitled to any ongoing indemnity benefits in relation to her January 24, 2008 workers' compensation injuries, including her nose, cheek, eye, or neck. N.C. Gen. Stat. § 97-2(9).
4. The greater weight of the competent and credible medical and other evidence of record establishes that Plaintiff has reached maximum medical improvement in relation to her workers' compensation injuries of January 24, 2008, and that further medical treatment is not reasonably required to effect a cure or to give relief. N.C. Gen. Stat. § 97-25.
5. The person claiming the benefit of compensation has the burden of showing that the injury complained of resulted from an injury by accident arising out of and in the course of employment.Henry v. A.C. Lawrence Leather Co.,231 N.C. 477, 57 S.E.2d 760 (1950). The greater weight of the competent and credible medical and other evidence of record establishes *Page 9 
that Plaintiff did not sustain a work-related injury by accident on April 15, 2008 or September 12, 2008. N.C. Gen. Stat. § 97-2(6).
 ***********
Based upon the foregoing Stipulations, Findings of Fact, and Conclusions of Law, the Full Commission enters the following:
 ORDER
1. Plaintiff's claim for indemnity benefits and medical treatment in relation to her January 24, 2008 workers' compensation injuries is hereby DENIED.
2. Plaintiff's claim for injury on April 15, 2008, is hereby DENIED.
3. Plaintiff's claim for injury on September 12, 2008, is hereby DENIED.
4. Each side shall bear its own costs.
This the ___ day of February 2010.
 S/___________________ PAMELA T. YOUNG CHAIR
CONCURRING:
 S/_____________ DIANNE C. SELLERS COMMISSIONER
 S/_____________ STACI T. MEYER COMMISSIONER *Page 1